FILED

NOT FOR PUBLICATION

FEB 27 2012

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In the Matter of: YELLOWSTONE MOUNTAIN CLUB, LLC, | No. 11-35368 |
| | D.C. No. 2:10-cv-00054-SEH |
| ROBERT SUMPTER, | |
| Appellant, | MEMORANDUM[*] |
| v. | |
| MARC S. KIRSCHNER, Trustee of the Yellowstone Club Liquidating Trust, | |
| Appellee. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted February 8, 2012
Seattle, Washington

Before: SCHROEDER, ALARCÓN, and GOULD, Circuit Judges.

This case arises out of the Chapter 11 proceedings of a group of entities

known as the Yellowstone Mountain Club (the "Club"), a private ski and golf

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. Rule 36-3.

community in Big Sky, Montana. Robert Sumpter served as the Club's director of development from September 1999 to August 2008. In July 2008, Sumpter exchanged his Company Membership (a non-dues paying membership provided at no cost as part of his compensation) for a special, non-dues paying Residential Membership by paying a $250,000 deposit. In November 2008, the Club filed for Chapter 11 bankruptcy protection. In June 2009, the bankruptcy court confirmed the Club's plan of reorganization, which rejected Sumpter's Residential Membership under 11 U.S.C. § 365(a).

The sole issue here is the proper measure of damages for that rejection. Kirschner (the trustee of the Club's Liquidating Trust, hereinafter "Appellee") argues that Sumpter may only gain the refund of his $250,000 deposit because that is what his Membership Agreement provides if his membership is recalled by the Club. Sumpter argues that he is entitled to a series of compensatory damages for (1) his deposit, (2) the anticipated appreciation in the value of his membership, which he argues he could realize by selling the membership after the Club is converted to an "Equity Club," (3) the amount of dues he would be required to pay over the next 29 years if he were to obtain a standard, dues-paying membership, and (4) the value of his option to "upgrade" his Residential Membership to a National Membership by paying an additional $50,000 deposit, for a total deposit

-2-

of $300,000, instead of the standard $1,000,000 deposit. The bankruptcy court granted summary judgment to Appellee and the district court affirmed. We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1), and we **AFFIRM**.

The language of Sumpter's Membership Agreement controls because it is clear and unambiguous. *In re Estate of Burrell*, 358 Mont. 460, 465 (2010). Sumpter's Membership Agreement provides that "[m]embership is not an investment in [the Club] . . . . A member only acquires a revocable license to use the Club Facilities" and that the Club "reserves the right, in its sole discretion, . . . to recall any membership at any time for any or no reason whatsoever." In the event Sumpter's membership was recalled, the agreement provided that "the Club will refund the Membership Deposit to the affected member within thirty (30) days." Sumpter also could terminate the agreement by resigning his membership, in which case he would be "repaid the Membership Deposit, without interest, within thirty (30) days after the membership has been reissued by the Club to a new member." The bankruptcy court interpreted this language as limiting Sumpter's rejection damages to the return of his $250,000 deposit.

Sumpter contends that the bankruptcy court erred by deciding to measure Mr. Sumpter's damages as if the contract had been revoked and to equate the

debtor's breach with the contract provisions governing a membership recall.  The bankruptcy court held:

> Sumpter's membership, described as a privilege, a revocable licence, and a non-investment, could be recalled by the Club at any time and for any or no reason whatsoever.  The Debtor's rejection of Sumpter's Membership Agreement is nothing more than a recall of the Membership Agreement. Indeed, Webster's Dictionary defines "recall" as "to call back" or "the act of revoking." Sumpter's damages are limited by the plain language of his Membership Agreement.  Sumpter's allowable damages under [11 U.S.C.] § 502(b) are $250,000, which corresponds to the amount specified in the agreement if the Club recalled or revoked the membership.

Sumpter argues that his Membership Agreement was not recalled, it was deemed breached the day before the petition was filed in 2008 by operation of 11 U.S.C. § 365(g), and that "the Membership Contract does not provide any remedy for either party's breach."  He further asserts that once the Club rejected his Membership Agreement it could no longer exercise its right to recall the contract, because "[a] party who breaches a contract cannot claim entitlement to that contract's benefits after such breach."  *Western Media, Inc. v. Merrick*, 232 Mont. 480, 485 (1988). Sumpter would have us hold that when a contract is terminated under § 365(a), contract provisions that provide what compensation is owed if the contract is unilaterally terminated are no longer applicable to the calculation of damages.  We reject Sumpter's position.

The Membership Agreement clearly provides that it can be unilaterally terminated by either party; Sumpter can resign or the Club can recall his membership "at any time for any or no reason whatsoever."  In either case the agreement provides that the Club will compensate Sumpter by returning his $250,000 deposit.  We agree with the bankruptcy court and hold that these provisions limit Sumpter's rejection damages to the return of his deposit.

**AFFIRMED**